# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MARTIN THOMAS,

    *Plaintiff,*

vs.

MICHAEL J. ASTRUE,
COMMISSIONER
OF SOCIAL SECURITY,

    *Defendant.*

Case No. 11-1348-EFM

**MEMORANDUM AND ORDER**

Plaintiff Martin Thomas seeks review of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for disability and disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. Thomas claims that the Commissioner's decision should be reversed because the administrative law judge ("ALJ") erred in formulating Thomas's residual functioning capacity by improperly rejecting limitations in a medical source assessment and by failing to adequately discuss medical opinions. Because the Court finds that the ALJ erred by failing to discuss significantly probative limitations, the Court orders that the decision of the Commissioner is reversed and remands this case for further consideration.

## I. Factual and Procedural Background

Thomas was born on May 9, 1961, and was forty-four years old on the alleged disability onset date. Prior to his alleged disability, Thomas worked as a letter carrier, a trash hauler, and a parts puller. Thomas graduated from high school and completed two years of vocational education. Thomas was not engaged in substantial gainful activity during the period of review.

In his applications for disability and supplemental security income, Thomas alleged that he was unable to work due to problems with his right ankle, right hip, and lower back. The agency denied Thomas's application both initially and upon reconsideration. Thomas subsequently requested a hearing before an ALJ.

At the administrative hearing held in October 2009, Thomas testified regarding his medical conditions. The ALJ also heard testimony from a vocational expert who discussed work that Thomas could perform at the light and sedentary exertional levels based upon Thomas's age, education, and work history. Following the hearing, the ALJ ordered Thomas to undergo a consultative examination with Dr. Sushmita Veloor because Thomas had not undergone medical treatment for his conditions since July 2008. After reviewing Dr. Veloor's December 8, 2009 medical assessment and Thomas's medical record, the ALJ denied Thomas's request for benefits.

The ALJ found that Thomas had not engaged in substantial gainful activity since the alleged disability onset date. The ALJ also found that Thomas had the following severe impairments: "a low back disorder, status post fusion at L5-S1 in 1993; a history of right ankle fracture in the 1980's; a right shoulder disorder; and a history of alcohol abuse." After finding that Thomas did not have an impairment equivalent to a listed impairment, the ALJ determined that Thomas had the residual functioning capacity ("RFC") to perform the full range of sedentary work. The ALJ found that Thomas was unable to perform any past relevant work but that based

upon Thomas's age, education, work experience, and RFC, a finding of "not disabled" was directed by Medical-Vocational Rule 201.21. The ALJ also found that there were jobs that existed in significant numbers in the national economy that Thomas could perform.

Thomas timely filed a request for review of the ALJ's decision. The Social Security Administration's Appeals Council denied Thomas's request for review on September 16, 2011. Because Thomas has exhausted all administrative remedies available to him, the Commissioner's decision denying Thomas's application for benefits is now final and this Court has jurisdiction to review the decision.

## II. Legal Standard

Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Upon review, the Court must determine whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standard.[1] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."[2] The Court is not to reweigh the evidence or substitute its opinion for the ALJ.[3] The Court must examine the record as a whole, including whatever in the record detracts from the ALJ's findings, to determine if the ALJ's decision is supported by

---

[1] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[2] *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted).

[3] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

substantial evidence.[4] Evidence is not substantial if it is overwhelmed by other evidence or if it is a mere conclusion.[5]

To establish a disability, a claimant must demonstrate a physical or mental impairment that has lasted, or can be expected to last, for a continuous period of twelve months and an inability to engage in any substantial gainful work existing in the national economy due to the impairment.[6] The ALJ uses a five-step sequential process to evaluate whether a claimant is disabled.[7] The claimant bears the burden during the first four steps.[8]

In steps one and two, the claimant must demonstrate that he is not presently engaged in substantial gainful activity and that he has a medically severe impairment or combination of impairments.[9] "At step three, if a claimant can show that the impairment is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits."[10] If, however, the claimant does not establish an impairment at step three, the process continues. The ALJ assesses the claimant's residual functioning capacity ("RFC"), and at step four, the claimant must demonstrate that his impairment prevents him from performing his past work.[11] The Commissioner has the burden at the fifth step to demonstrate that work exists in the national

---

[4] *Wall*, 561 F.3d at 1052 (citing *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)).

[5] *Id.* (citing *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005)); *see also Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

[6] 42 U.S.C. § 1382c(3)(A); *see also id.* § 423(d)(1)(A).

[7] 20 C.F.R. § 404.1520(a); *see also Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010).

[8] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[9] *Id.*

[10] *Id.*

[11] *Id.*; *see also* 20 C.F.R. § 416.920(a)(4)(iv).

economy within the claimant's RFC.¹² The RFC assessment is used to evaluate the claim at both steps four and five.¹³

## III. Analysis

Thomas challenges only the ALJ's RFC determination. Thomas argues the ALJ failed to comply with the requirements of Social Security Ruling ("SSR") 96-8p because (1) the ALJ did not discuss limitations contained in Dr. Veloor's December 8, 2009 medical source statement that were not included in the RFC, (2) the ALJ improperly rejected Dr. Veloor's assessment that Thomas had limitations on his ability to sit and stand/walk, and (3) the ALJ did not adequately address other medical opinions included in Thomas's medical record. The Commissioner argues that the ALJ substantially complied with the requirements of SSR 96-8p and that any mistakes that might have been committed by the ALJ were harmless error.

Under SSR 96-8p, an RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."¹⁴ In addition, the ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence in the case record.¹⁵ An ALJ must also "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."¹⁶

---

¹² *Id.*; *see also* 20 C.F.R. § 416.920(a)(4)(v).

¹³ *See* 20 C.F.R. § 404.1520(a)(4)(iv)–(v).

¹⁴ *See* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

¹⁵ *Id.*

¹⁶ *Id.*

Here, the ALJ found that Thomas had the RFC to perform a full range of sedentary work as defined in 20 C.F.R. 404.1567 and 416.967(a). In making this RFC determination, the ALJ gave substantial weight to Dr. Veloor's medical assessment.[17] The majority of limitations Dr. Veloor indicated were necessary are consistent with the requirements for performing the full range of sedentary work. Dr. Veloor found that Thomas was able to occasionally lift ten pounds and frequently lift less than ten pounds.[18] Dr. Veloor also found that Thomas should never climb, balance, crouch, or crawl and that Thomas could only kneel occasionally.[19] Dr. Veloor imposed environmental limitations, noting Thomas should have limited exposure to temperature extremes, vibration, humidity and wetness, and hazards.[20]

Dr. Veloor also imposed limitations that would erode the sedentary occupational base. Dr. Veloor indicated that Thomas could stand and walk less than two hours in an eight-hour workday and could sit less than about six hours in an eight-hour workday.[21] Thomas also was

---

[17] The ALJ's decision and Thomas's briefing refer to the medical assessment of Dr. Joseph G. Sankoorikal. It appears that Dr. Sushmita Veloor, a doctor in Dr. Sankoorikal's practice, actually performed the consultative examination on December 8, 2009. *See* ALJ Decision, Doc. 10-2, at 15 (noting that Thomas went to a consultative examination on December 8, 2009, with Dr. Sankoorikal); Disability Examination by Dr. Veloor, Doc. 10-8, at 51 (noting that Dr. Veloor conducted a disability examination of Thomas on December 8, 2009).

[18] *See* 20 C.F.R. § 416.967 ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."); *see also id.* § 404.1567.

[19] *See* SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996) ("Postural limitations or restrictions related to such activities as climbing ladders, ropes or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work.").

[20] *See id.* at 9 ("In general, few occupations in the unskilled sedentary occupational base require work in environments with extreme cold, extreme heat, wetness, humidity, vibration, or unusual hazards. . . . Even a need to avoid all exposure to these conditions would not, by itself, result in a significant erosion of the occupational base.").

[21] *See id.* at 6 ("The full range of sedentary work requires that an individual be able to stand and walk for a total of approximately 2 hours during an 8-hour workday."); *id.* ("In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals.").

restricted to occasionally reaching with his right arm and never stooping.[22] The ALJ declined to give weight to the limitation on Thomas's ability to sit or stand. The ALJ did not mention the reaching or stooping limitations or give any reason why limitations on reaching and stooping would not affect Thomas's ability to perform a substantial number of sedentary jobs.

A.      **Occasionally Reaching and Never Stooping**

Thomas argues the ALJ erred by failing to address why she did not include the limitations on reaching and stooping in the RFC. Although "an ALJ is not required to discuss every piece of evidence," the ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."[23] Here, Dr. Veloor's assessment that Thomas could only occasionally reach with his right arm and never stoop is significantly probative because they impact the jobs Thomas could perform in the sedentary occupational base. Under SSR 96-9p, "[a] *complete* inability to stoop . . . significantly erode[s] the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply." Social Security Ruling 85-15(c) states that reaching is an activity "required in almost all jobs" and that a significant limitation on reaching "may eliminate a large number of occupations a person could otherwise do."[24] Accordingly, the ALJ erred by failing to discuss why she rejected these limitations.

The Commissioner argues the ALJ's failure to discuss why she rejected the limitations on reaching and stooping is harmless error because Thomas could still perform one of the jobs cited

---

[22] *Id.* ("An ability to stoop occasionally, i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations.").

[23] *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).

[24] SSR 85-15(c), 1985 WL 56857, at *7 (Jan. 1, 1985).

by the vocational expert. The vocational expert cited three sedentary jobs Thomas could perform based on the hypothetical provided by the ALJ and occupational information in the Dictionary of Occupational Titles. The vocational expert determined that Thomas could be a document preparer, a semiconductor bonder, and an optical goods assembler.[25] Although none of the jobs cited by the vocational expert require stooping, the document preparer job and the optical goods assembler job require an employee to be able to reach frequently.[26] Only the semiconductor bonder job matches all of the limitations Dr. Veloor recommended in the medical assessment.[27]

    Citing *New v. Astrue*,[28] the Commissioner argues Thomas's ability to perform the semiconductor job is sufficient to show Thomas could perform other work in the national economy. In *New*, the ALJ did not incorporate the state agency medical consultant's non-exertional limitations into the claimant's RFC, and the ALJ's decision did not mention the limitations.[29] The Court found that even if the ALJ erred by not including the limitations, the claimant failed to show how the error harmed or prejudiced her because even if the ALJ had adopted the limitations, the claimant could still perform her past relevant work. The Court also noted that limitations in climbing, crawling, kneeling, crouching and reaching would not have a significant impact on the base of sedentary jobs.[30]

---

[25] *See* Dictionary of Occupational Titles No. 249.587-018, 1991 WL 672349 (document preparer); *id.* 726.685-066, 1991 WL 679631 (semiconductor bonder); *id.* 713.687-018, 1991 WL 679271 (optical goods assembler).

[26] *See id.* 249.587-018, 1991 WL 672349 (document preparer); 713.687-018, 1991 WL 679271 (optical goods assembler).

[27] *See id.* 726.685-066, 1991 WL 679631 (semiconductor bonder).

[28] 2012 WL 1108556 (D. Kan. April 2, 2012).

[29] *Id.* at *9.

[30] *Id.*

*New* is distinguishable from this case because here Thomas is limited in his ability to reach *and* stoop whereas in *New* the claimant only had a limitation on reaching. As noted above, a complete inability to stoop significantly erodes the occupational base. Thus, a complete inability to stoop coupled with an ability to reach only occasionally would have a significant impact on the base of sedentary jobs.

Additionally, the number of semiconductor bonder jobs available is not sufficient to show as a matter of law that Thomas could perform work that existed in significant numbers in the national economy. The vocational expert testified that there are 500 semiconductor jobs in Kansas and 115,000 jobs nationally. The Tenth Circuit has previously found that an occupation reflecting 600-950 statewide jobs was not sufficient to show as a matter of law that work existed in significant numbers in the region where the claimant lived.[31] Moreover, because the ALJ found that significant numbers existed based on the vocational expert's testimony that there were three jobs that Thomas could perform, the ALJ did not make a factual finding regarding the significance of the semiconductor jobs available that the Court can review.[32] Accordingly, the Court declines to find harmless error on the grounds that the number of semiconductor jobs is significant as a matter of law.[33] Without expressing any opinion concerning the merits of the

---

[31] *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992) (finding that an evidentiary showing of 650–900 statewide jobs was not sufficient to show that work existed in significant numbers in the region where the claimant lived as a matter of law); *see Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting that in *Trimiar*, the Court "explicitly addressed an ALJ's finding of numerical significance with respect to an occupation reflecting 650–900 statewide jobs, indicating that such a number was small enough to put the issue in a gray area requiring the ALJ to address it and . . . [the Court] to review what he or she decided").

[32] *See Trimiar*, 966 F.2d at 1330 (affirming the ALJ's factual finding that significant numbers existed).

[33] *See Allen*, 357 F.3d at 1144 (noting that "the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation, and, most importantly, that the evaluation 'should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation'" (quoting *Trimiar*, 966 F.2d at 1330)); *see Trimiar*, 966 F.2d at 1330 (noting several factors that should be considered when deciding what constitutes a "significant number" of jobs).

issue, the Court remands this matter for the ALJ to address the limitations in Dr. Veloor's medical assessment that Thomas can reach only occasionally with his right arm and never stoop.

B.     **Limitations on Sitting and Standing/Walking**

Thomas next challenges the ALJ's rejection of Dr. Veloor's opinion that Thomas could not work a full eight-hour day because Thomas could only stand or walk for less than two hours in an eight-hour day and could only sit for less than six hours in an eight-hour day. The ALJ explained her decision by noting, "[t]here is no evidence, even if [sic] the consultative examiner's evaluation, that the claimant cannot work an eight-hour day at the sedentary exertional level. No explanation is provided as to why he cannot stand or walk for 2 hours and sit for 6 hours." Thomas argues the ALJ rejected Dr. Veloor's recommendation on the basis of speculation and her own lay opinion.

"In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."[34] Here, the ALJ rejected Dr. Veloor's assessment regarding Thomas's ability to sit and stand/walk because the assessment was contrary to the other medical evidence. A review of the record indicates that the other doctors did not place restrictions on Thomas's ability to sit and stand/walk that would prevent him from being able to work a full eight-hour day. Thus, the Court finds that there is substantial evidence to support the ALJ's conclusion that Thomas did not have sitting or standing/walking restrictions that prevented him from working an eight-hour day at the sedentary exertional level.

---

[34] *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).

### C. Medical Opinion Evidence

Finally, Thomas argues that the ALJ erred by failing to properly consider medical opinion evidence when formulating the RFC. Thomas argues that the ALJ failed to adequately address the medical assessments of Dr. Bieri, Dr. Coleman, Dr. Cowles, and Dr. Prostic. The limitations recommended by Dr. Veloor are more restrictive than those recommended by the other doctors. By adopting Dr. Veloor's more limited restrictions, the ALJ adopted the limitations most favorable to Thomas's claim that he was disabled. Thus, even if Thomas is correct that the ALJ failed to adequately address the medical assessments of the other doctors, Thomas fails to demonstrate he was prejudiced by this alleged error.

**IT IS ACCORDINGLY ORDERED** this 4th day of October, 2013, that the judgment of the Commissioner is **REVERSED**, and that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) **REMANDING** the case for further proceedings consistent with this memorandum and order.

**IT IS SO ORDERED**.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE